UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JOHN M. FIFE, ET AL.,<br><br>Defendants. | No. 20 CV 5227<br><br>District Judge Maldonado<br><br>Magistrate Judge McShain |

**ORDER**

Pending before the Court is defendants' motion for reconsideration [156] of the Court's order of January 25, 2024 [124],[1] which denied their second motion to compel. The SEC has filed a response. [158]. For the following reasons, the motion is denied.

"[C]ourts in this District have construed motions to reconsider interlocutory orders," such as the Court's order denying the motion to compel, "as arising under Rule 54(b)." *Caine v. Burge*, 897 F. Supp. 2d 714, 716 (N.D. Ill. 2016). "A motion for reconsideration brought pursuant to Rule 54(b) may be granted where the Court has obviously misunderstood a party, where the Court's decision rests on grounds outside the adversarial issues presented to the Court by the parties, where the Court has made an error not of reasoning but of apprehension, where there has been a controlling or significant change in the law since the submission of the issue to the Court, or where there has been a controlling or significant change in the facts of the case." *Id.* "[U]nder ordinary circumstances, motions for reconsideration are disfavored–and for sound institutional reasons. They serve an extremely limited purpose: the correction of manifest errors of law or fact or the presentation of newly discovered evidence." *Stagger v. Experian Info. Sols.*, No. 21 C 2001, 2021 WL 5564867, at *1 (N.D. Ill. Nov. 29, 2021) (internal citations omitted). "A motion for reconsideration of a discovery order is even more limited than one for reconsideration of a substantive ruling, as discovery rulings involve matters of discretion." *Id.*

The Court's order denying defendants' second motion to compel addressed four defense discovery requests, but the motion to reconsider concerns only request for production (RFP) 77. RFP 77 sought 23 pages of internal SEC emails that SEC

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

employees exchanged in May and June 2020 in response to an inquiry from a law firm (that apparently had no connection to this case or these defendants) that wanted to discuss with the SEC "a brewing concern for smaller public companies as it relates to convertible note holders being characterized as dealers," "the negative impact it is having on the financing market," and "frustration from the marketplace." [118-9] 16-17; *see also* [118] 12-15. The Court denied the motion to compel as to RFP 77 based on its conclusion that "personal opinions of SEC employees and the internal discussions among those employees are irrelevant in this case." [155] 4 (internal quotation marks omitted). The Court found that the emails were not relevant to defendants' fair-notice defense because they were "internal communications among SEC employees, and there is no indication that the emails were ever shared publicly or that they were intended to represent authoritative SEC positions." [*Id.*].

Defendants argue that reconsideration is warranted because the Court (1) misapprehended their argument for why the emails were relevant and (2) ignored controlling Seventh Circuit precedent. [156] 2-3. Having reviewed the parties' original briefs, the order denying the motion to compel, and the briefing on the motion to reconsider, the Court adheres to its ruling that the emails are not relevant to defendants' fair-notice defense.

First, defendants contend that the Court misunderstood their argument for why the emails were relevant: they "likely showed 'confusion' within the agency itself as to the applicable legal standard"–*i.e.*, that SEC employees themselves were confused over whether convertible-note lenders like the defendants qualify as "dealers" who must register under the securities laws. [156] 2. The Court disagrees that it misapprehended or failed to consider that argument. While the Court did not use the terms "confusion" or "agency confusion" in its decision, the Court's determination that the emails contained only the personal, nonauthoritative opinions of agency personnel that were never made public (let alone provided to these defendants) sufficed to dispose of defendants' argument. In prior rulings, the Court has held that similar evidence of SEC employees' personal opinions or knowledge about convertible-debt transactions was not relevant to the fair-notice defense. *See, e.g.*, [89] 25-26; *see also* [*id.*] 33 ("whether an individual commissioner or commissioners embraced the position the SEC decided to adopt in bringing this suit is irrelevant"). The Court's denial of defendants' request for this batch of internal SEC emails was an application of that principle and an extension of those prior rulings. In other words, even if defendants are correct that the emails show that SEC personnel were confused about the "dealer" theory that the agency is pursuing in this case, this confusion is not relevant because it is based only on "personal opinions held by individual Commission staff members" that "could not be attributed to the Commission itself" and "were never communicated to anyone outside the confines of the Commission." *S.E.C. v. Nacchio*, Civil Action No. 05-cv-480-MSK-CBS, 2009 WL 211511, at \*13 (D. Colo. Jan. 29, 2009); *see also SEC v. SBB Rsch. Grp., LLC*, No. 19 C 6473, 2022 WL 2982424, at \*12 (N.D. Ill. Jul. 28, 2022) ("What Defendants fail to

sufficiently explain is why it matters to any issue in the case whether an individual examiner's internal reactions and analyses at some point during the compliance examination (2014-2016) were consistent with the SEC's allegations in this 2019 lawsuit filed after the Division of Enforcement investigation"). While defendants contend that cases like *Nacchio* and *SBB Research* are not persuasive because they did not squarely address the relevance of internal agency confusion to a fair-notice defense, this argument amounts only to a disagreement with the Court's reasoning and is not a proper basis for reconsideration under Rule 54(b).

Second, defendants have not demonstrated that the Court contravened controlling precedent in holding that the emails were irrelevant. Defendants rely on a single Seventh Circuit case, *Kropp Forge Company v. Secretary of Labor*, 657 F.2d 119 (7th Cir. 1981), but *Kropp* does not address or even shed light on the discovery dispute that has precipitated defendants' motion to compel and their motion for reconsideration. In that case, a federal agency cited a steel plant for generating noise that continuously exceeded 90 decibels and failing to maintain an effective hearing-conservation program. *Id.* at 121. According to the agency, the company's plan "lacked six elements" that a provision in the Code of Federal Regulations required it to implement to have an "effective" conservation program. *Id.* Kropp challenged the citation on the ground that "the standard which it is said to have violated does not provide 'fair warning' of what is required or prohibited and is therefore unenforceably vague," and the Seventh Circuit agreed. *Id.* at 122. The court held that the text of the regulation "does not give any warning to employers that their conservation programs must contain these six elements." *Id.* The court then observed that neither statements by the Secretary of Labor that were memorialized in the Federal Register nor an "official definition" of "hearing conservation program" published by the Department of Labor referred in any way to the six elements that Kropp's conservation program lacked. *Id.* Finally, the Court added that "[e]ven the compliance officer" who inspected the plant "testified that the six elements listed in the citation were not required by the then controlling regulation nor thought by her to be included in the standard." *Id.* at 123 (internal citation omitted).

Seizing on the court's reference to the compliance officer's testimony, defendants maintain that *Kropp* establishes that such testimony–and, by analogy, the opinions of the SEC employees who emailed about applying the "dealer" requirement in the context of the convertible-lending industry–is "relevant evidence of what a reasonable person in the defendant's position *also* would have thought" a statute or regulation meant. [156] 4 (emphasis in original). Contrary to defendants' position, *Kropp* does not establish any rules for determining whether or to what extent evidence of internal agency confusion is relevant or discoverable in cases where a regulated party has raised a fair-notice defense. Furthermore, *Kropp*'s holding that the regulation did not provide fair notice was based on publicly available or publicly expressed information: the text of the regulation, two sources of authoritative agency guidance, and comments made by a compliance officer during

3

an agency proceeding to adjudicate Krupp's own liability for violating a regulation. Even accepting defendants' reading of *Kropp* as holding that the compliance officer's testimony was relevant evidence of agency confusion, that testimony is a far cry from the emails at issue here. Unlike in *Kropp*, the SEC emails were sent privately by SEC employees, in response to an inquiry from a third-party who has nothing to do with this case or defendants' involvement in it, and were never made public–let alone during a public hearing during which defendants' compliance with the securities law was at issue. For all these reasons, the Court does not believe that its denial of the motion to compel as to RFP 77 contravened *Kropp*.

Finally, while defendants also rely on *General Electric Company v. EPA*, 53 F.3d 1324 (D.C. Cir. 1995), and *SEX v. Kovzan*, No. 11-2017-JWL, 2012 WL 4819011 (D. Kan. 2012), neither case is binding on this Court. For the sake of completeness, the Court notes that, in *General Electric*, the evidence of agency confusion included a letter from "one EPA regional office" that concluded regulated parties could follow a certain distillation method that, according to the EPA in that litigation, was in fact unlawful, as well as General Electric's "assert[ions] in its initial replies to the agency that a second regional office had told it the same thing." 53 F.3d at 1332. Thus, in concluding that "confusion at the regional level is yet more evidence that the agency's interpretation of its own regulation could not possibly have provided fair notice," *id.*, the D.C. Circuit was referring to an agency's publicly issued guidance, not the internal correspondence between agency employees that never became public and was not intended to guide a regulated party's conduct. And in *Kovzan*, the district court ordered production of non-public documents where "the SEC has not provided any reason why" a fair-notice defense "may not include matters contained in non-public documents held by the SEC." 2012 WL 4819011, at *5. In contrast, here the SEC has consistently opposed the discovery of such material on relevance grounds, among others, and the Court has found those arguments persuasive. Thus, neither *General Electric* nor *Kovzan* provides grounds for granting reconsideration under Rule 54(b).

## Conclusion

Defendants' motion for reconsideration [156] is denied.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: February 23, 2024**

4